| Edison v Winiarski |
| :---: |
| **Edison v Winiarski** |
| 2024 NY Slip Op 33136(U) |
| September 6, 2024 |
| Supreme Court, Kings County |
| Docket Number: Index No. 514778/2018 |
| Judge: Consuelo Mallafre Melendez |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------------------X
DARRYL EDISON,

      Plaintiff,

  -against-

RAY WINIARSKI, M.D., BROOKLYN PREMIER ORTHOPEDICS AND PAIN MANAGEMENT, PLLC and LONG ISLAND JEWISH FOREST HILLS HOSPITAL,

      Defendants.
-------------------------------------------------------------------------X

**DECISION & ORDER**

Index No. 514778/2018
 Mo. Seq. 5

**HON. CONSUELO MALLAFRE MELENDEZ, J.S.C**.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:

<u>NYSCEF #s:</u> 85-113

Defendants Raz Winiarsky s/h/a Raz Winiarski, M.D. ("Raz Winiarsky") and Brooklyn Premier Orthopedics and Pain Management, PLLC ("Brooklyn Premier Orthopedics") move (Seq. No. 5) for an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's complaint and all causes of action against them. Plaintiff opposes the motion.

Plaintiff commenced this action on July 19, 2018, asserting claims of medical malpractice and lack of informed consent in connection with a total knee replacement surgery and revision surgery. Plaintiff's claims against co-defendant Long Island Jewish Forest Hills Hospital were discontinued by so-ordered stipulation on February 26, 2021.

Prior to the events at issue, Plaintiff had a history of bilateral knee issues and underwent a left knee replacement on March 6, 2014.

1

[* 1]

On December 7, 2015, Plaintiff first presented to Dr. Winiarsky at Brooklyn Premier Orthopedics[1] with right knee pain, a limp, and inability to bear weight on the leg. Upon examination and x-rays, he was assessed with "severe right knee degenerative joint disease." The records reflect that they discussed the options of conservative treatment or total right knee replacement, and Plaintiff consented to a total right knee replacement.

Dr. Winiarsky was the lead surgeon in the initial knee replacement surgery on February 11, 2016 at Long Island Jewish Forest Hills Hospital. He noted Plaintiff had a valgus knee (angled outward) prior to the replacement. Following the procedure, it was in varus alignment (angled inward). Plaintiff was discharged home on February 14, 2016, and continued seeing Dr. Winiarsky for post-operative follow ups.

On follow up visits February 17, February 24, and March 16, Plaintiff had some complaints of pain and swelling and 0-110 degree range of motion. On May 9, his range of motion was 0-95 degrees.

On October 5, 2016, Plaintiff returned to Dr. Winiarsky with complaints of severe pain, swelling, and buckling of the right knee. His blood work was negative for infection. Dr. Winiarsky ordered a bone scan, which was reviewed by a radiologist as "consistent with loosening of the femoral and tibial components of the right knee prosthesis." On November 3, Dr. Winiarsky performed an arthroscopy of the right knee. On December 7, 2016, Dr. Winiarsky noted "there was too much laxity on varus and valgus stress and external rotation" and recommended a revision surgery with constrained polyethylene.

Dr. Winiarsky performed the revision surgery on Plaintiff on December 22, 2016, at Long Island Jewish Forest Hills Hospital. His operative report noted that "[t]he patient did have a loose right knee, but additionally the patient did have a loose tibial component." The components were replaced with constrained polyethylene of a larger size. Plaintiff was discharged home on December 25. Plaintiff complained of pain, stiffness, and numbness on his follow-up visits on January 9 and January 16. Dr. Winiarsky documented that "the hardware appears to be in good position" based on an x-ray taken on January 11, which found "well-positioned

---

[1] It is conceded by Defendants that Dr. Winiarsky is a member of the Brooklyn Premier Orthopedics group practice. They move jointly for summary judgment on the basis there are no issues of fact as to Dr. Winiarsky's alleged malpractice.

2

constrained right total knee arthroplasty" with moderate effusion and soft tissue thickening. Dr. Winiarsky recommended continued physical therapy.

Plaintiff was subsequently treated by non-party Roshan P. Shah, M.D. ("Dr. Shah"), who documented "several months" of buckling and pain following the December 22 revision. Dr. Shah performed a second revision surgery on September 8, 2017, noting "failure of right revision total knee replacement" as his pre- and post-operative diagnosis.

Plaintiff alleges that Dr. Winiarsky departed from the standard of care during the February 11 total knee replacement surgery and December 22 revision surgery, and these departures were the proximate cause of the failure of his knee replacement and need for additional surgery.

"In determining a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party" (*Stukas v Streiter,* 83 AD3d 18, 22 [2d Dept 2011]). In evaluating a summary judgment motion in a medical malpractice case, the Court applies the burden shifting process as summarized by the Second Department:

> "The elements of a medical malpractice cause of action are a deviation or departure from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries. When moving for summary judgment, a defendant provider has the burden of establishing the absence of any departure from good and accepted medical practice or that the plaintiff was not injured thereby. In order to sustain this burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's bill of particulars. In opposition, the plaintiff must demonstrate the existence of a triable issue of fact as to the elements on which the defendant has met his or her initial burden. General allegations of medical malpractice, merely conclusory and unsupported by competent evidence tending to establish the essential elements of medical malpractice, are insufficient to defeat a defendant's summary judgment motion. Although summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions, expert opinions that are conclusory, speculative, or unsupported by the record are insufficient to raise triable issues of fact" (*Barnaman v Bishop Hucles Episcopal Nursing Home,* 213 AD3d 896, 898-899 [2d Dept 2023] [internal quotation marks and citations omitted].

In support of their motion, Defendants submit an expert affirmation from Craig Levitz, M.D. ("Dr.

[* 3]

Levitz"), a licensed physician certified in orthopedic surgery and sports medicine, as well as relevant medical records and deposition transcripts.

Based on the record and his expertise, Dr. Levitz opines that Dr. Winiarsky complied with the standard of care in his treatment of Plaintiff and his performance of the February 11, 2016 and December 22, 2016 surgeries. The expert details the surgery in the operative report and opines that the February 11 knee replacement was performed in a "standard fashion," using intraoperative x-rays and appropriately sized prosthetic components. He opines that the goal of a knee replacement is "to achieve stability and balance," and it is not a departure from the standard of care if the knee is in varus. He also opines that the 12 cm incision he used is common and sufficient to visualize the anatomy.

Dr. Levitz further opines that it was a "proper exercise of medical judgment" not to use constrained polyethylene in the initial February 11 surgery, because "balance is more relevant for the initial replacement" and it is more difficult to achieve with constrained polyethylene. He opines that on the December 22 revision surgery, constrained polyethylene was used for greater stability, which is in accordance with the standard of care. He also opines that using a different sized component in the December 22 surgery was necessary "to compensate loss of bone stock," and not evidence of a departure from the standard of care in either surgery.

On the issue of proximate causation, Dr. Levitz opines that Plaintiff's alleged injuries and need for additional surgery were not caused by any departures from the standard of care, but rather known risks and complications that can occur in the absence of negligence. He states that "premature loosening of the prosthesis" can occur for unforeseeable and non-negligent reasons, such as reabsorption of cement which occurs in 5% of patients. He opines that Plaintiff's risk factors including obesity (weighing approximately 290 pounds at the time of the surgeries) made the varus alignment of the knee "much harder to correct" or prevent. Additionally, he opines that if the knee replacement had failed due to misalignment (the varus position), as Plaintiff alleges, this problem would "manifest over a course of years," rather than manifesting with symptoms immediately and requiring revision within a year. Therefore, he opines that Plaintiff's claimed injuries were not the result of any departures from the standard of care by Dr. Winiarsky.

[* 4]

Finally, Dr. Levitz opines that consent was properly obtained for both surgeries. It is undisputed by Plaintiff that Dr. Winiarsky discussed the risks, benefits, and alternatives to the procedures, and it is undisputed that Plaintiff signed consent forms prior to both surgeries.

Based on the submissions, the expert has established prima facie that Dr. Winiarsky is entitled to summary judgment on the issues of liability, proximate causation, and lack of informed consent. The burden shifts to Plaintiff to raise a triable issue of fact.

In opposition to the motion, Plaintiff submits an expert affirmation from Andrew Collier, M.D. ("Dr. Collier"), a licensed physician certified in orthopedic surgery, who avers he has performed numerous knee replacements, including on obese patients. Plaintiff also submits additional medical records.

Based on the record and his relevant expertise, Dr. Collier opines that Dr. Winiarsky did not comply with the standard of care in the February 11 total knee replacement surgery. Plaintiff's primary allegation of malpractice is that Dr. Winiarsky improperly left the knee in excessive varus alignment (commonly "bow leg" or angled inward to the body, as explained by Dr. Collier). The expert opines. based on the operative report and subsequent x-rays, that Plaintiff's failed knee replacement resulted from Dr. Winiarsky "removing an excessive amount of the tibia from the medial side," causing malrotation the femur and tibia, and creating a 4-5 degree varus alignment.

In Dr. Collier's opinion, contrary to statements made in Dr. Winiarsky's testimony, it is not "acceptable" within the standard of care to have varus up to 5 degrees (Dr. Winiarsky defined "extreme varus" over 7 degrees in his deposition). Dr. Collier opines that "the goal is to put the knee in valgus" in a knee replacement, since it is more stable and less prone to failure than varus alignment. He further opines that a varus alignment above 3 degrees, particularly for obese patients, increases stress on the tibial component and causes parts to loosen, as he opines happened in Plaintiff's case. Thus, he opines that Dr. Winiarsky creating and not correcting a 4-5 degree varus alignment during the February 11 surgery was excessive and a departure from the standard of care.

Dr. Collier also opines that Dr. Winiarsky departed from the standard of care during the December 22 revision surgery. Following this surgery, the knee remained at 4 degrees varus, as Dr. Winiarsky testified and as

5

Dr. Collier opines from his own review of the x-rays taken on January 11, 2017. Dr. Collier notes that Dr. Shah, who subsequently treated Plaintiff, observed that Plaintiff had "a varus deformity to the tibia" in August 2017 and that "[h]is symptoms may be coming from overall alignment of varus." In the second revision surgery performed by Dr. Shah, "he placed the knee at 2 degrees valgus during the surgery." Dr. Collier opines that in contrast, Dr. Winiarsky departed from the standard of care by not correcting and "properly realigning" the knee on December 22.

On the issue of causation, Dr. Collier counters the opinion of Defendants' expert that knee replacements may fail for reasons unrelated to malpractice. Dr. Collier opines that most knee replacements last 10-15 years or more, and the failure of knee replacement within one year is an "extremely rare" occurrence in less than 1% of cases, which would only be caused by "infection (not present here), trauma (not present here), or misalignment of the component parts due to departures from good and accepted medical practice." Regarding the comments on Plaintiff's obesity as a cause of the failure, Dr. Collier notes that he had a prior left knee replacement in 2014 without complications. He also counters Dr. Levitz's opinion that a failure resulting from misalignment would not manifest immediately but over a course of years. He offers the counter-opinion that the loosening of Plaintiff's knee components, pain, decreased range of motion, and need for revision surgery within a year are consistent with a varus alignment over 3 degrees and a direct result of this alleged departure from the standard of care.

"When experts offer conflicting opinions, a credibility question is presented requiring a jury's resolution" (*Stewart v. North Shore University Hospital at Syosset*, 204 AD3d 858, 860 [2d Dept. 2022], citing *Russell v. Garafalo,* 189 A.D.3d 1100, 1102, [2d Dept. 2020]). Here, the conflict between the experts on the significance of the 4-5 degree varus alignment – as both a departure from the standard of care and proximate cause of Plaintiff's injuries – presents a clear issue of fact and credibility that must be resolved by a trier of fact, precluding summary judgment.

Contrary to the argument of the movants on reply, Plaintiff did not fail to address the statements of their expert that a failed knee replacement *may* be caused by reabsorption of cement. Movants' expert does not cite to evidence in the record that cement reabsorption was the cause of Plaintiff's injuries, but merely opines that this

6

[* 6]

is a non-negligent explanation for failure in approximately 5% of recipients. Plaintiff's expert has sufficiently set forth a conflicting opinion that failure within one year occurs in less than .1% of cases and Plaintiff's need for revision surgeries would only be caused by infection, trauma, or misalignment within that timeline. This issue must be resolved by a jury and not as a matter of law.

Notwithstanding the above, Plaintiff's expert does not address the issue of informed consent. Plaintiff raises no genuine issues of fact to counter the Defendants' showing that the risks, benefits, and alternatives to the surgery were properly explained within the appropriate standard of care, and that Plaintiff knowingly consented to the surgeries. The argument he did not "consent" to the alleged negligence of the Defendants is without merit and not supported by any legal authority. Accordingly, the motion is granted to the extent of dismissing the informed consent cause of action only. The motion is otherwise denied in all respects. The Court will not entertain dismissal of specific claims and theories of medical malpractice, as sought by the movants in reply.

It is hereby:

**ORDERED** that Dr. Winiarsky and Brooklyn Premier Orthopedics's motion (Seq. No. 5) seeking an Order, pursuant to CPLR 3212, granting summary judgment in their favor and dismissing Plaintiff's complaint against them is **GRANTED TO THE EXTENT** of dismissing Plaintiff's second cause of action for lack of informed consent, and the motion is otherwise **DENIED.**

This constitutes the decision and order of this Court.

**ENTER.**

**Hon. Consuelo Mallafre Melendez**

**J.S.C.**